### LLORENS v. McCANN et al.*

### No. 5340.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1937.

Lee J. Novo, of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

HAMITER, Judge.

Plaintiff's eight year old son, Edwin Jerome Llorens, was killed when he jumped

*Rehearing denied Feb. 5, 1937.

from the rear end of a moving delivery truck which belonged to and was operated by the McCann & Patterson Transfer Company. The accident occurred shortly after darkness had begun on the evening of November 5, 1934, in the city of Alexandria. Damages for the death of such child are sought by plaintiff against the individual persons composing the above-named firm, and against its insurer, the Maryland Casualty Company of Baltimore, Md.

All defendants excepted to the petition as disclosing no cause or right of action. Their exceptions were overruled by the trial court.

The case was then put at issue by a joint answer of the defendants. After a trial on the merits, defendants renewed their exceptions of no cause or right of action. Obviously, the exceptions were again overruled, for the district judge decided the case on its merits by rejecting plaintiff's demands at his cost. This appeal was then prosecuted by the party cast.

In this court, defendants contend that their exceptions should have been sustained, and urge that our judgment be in accordance with their contention. Because of the conclusion which we have reached, and hereafter express, we deem it unnecessary to pass upon the above referred to exceptions and prefer to base our decision on the merits of the case.

The undisputed facts are as follows: On November 5, 1934, the McCann & Patterson Transfer Company, which operated a transfer and delivery business, was employed to make delivery of some household furniture to the home of a woman named Susie Caldwell, located on John Thomas street, about a short block off Third street, in the city of Alexandria. Pursuant to this employment, the truck was dispatched, and was in the charge and care of Ed Jones, the driver, and Nelse Waddy, a helper. With its cargo aboard, the vehicle was stopped near the corner of John Thomas and Third streets in close proximity to plaintiff's store, and the driver and helper inquired of some small boys, who were standing there, regarding the location of the Susie Caldwell house. These boys were C. J. Jones, aged nine, James Patrick Llorens, aged eleven, and the decedent, Edwin Jerome Llorens, aged eight.

After receiving the requested information, the driver directed his truck to its destination on John Thomas street, a short distance from the place where the boys were standing. After unloading and delivering the furniture, the machine was caused to be propelled backward to and into Third street. Its gears were then shifted, as required, and it was started and run along Third street in the direction from whence it came. Shortly after the truck passed plaintiff's store, and while it was moving, Edwin Jerome Llorens, an occupant thereof, jumped from its rear end onto the paved street and was injured. Death resulted a short time thereafter because of his injuries.

The testimony of the witnesses offered by plaintiff is mainly to the effect that when the children were asked about the location of the Caldwell woman's home, one or more of them replied that they knew where she lived. The truck driver and helper then requested them to accompany the truck to the house. All three of the children entered the cab part of the truck and proceeded to direct the driver to the place of delivery. On their arrival, these children assisted in moving the furniture into the premises. During the removal process, three other children joined the group, while James Llorens, one of the original three boys, departed from that location. When the delivery was completed, the five remaining boys boarded the truck and sat with their feet hanging off its rear end, all to the knowledge of the truck driver and his helper. One of the larger of these boys then directed the driver in backing the truck to Third street. After reaching Third street, and making the necessary turn, the truck driver, without paying attention to the children, shifted the gears of the vehicle and started forward. At this point the three larger boys jumped from the truck, thus leaving therein C. J. Jones and Edwin Jerome Llorens. The truck then continued its journey up Third street. No effort was made to permit the boys to disembark therefrom. As it passed the plaintiff's store, C. J. Jones jumped, injuring himself to some extent. Thereafter, the eight year old boy became terrified, cried, and screamed. He went to the cab and tried to attract the attention of the driver. Failing in his efforts, he proceeded to the rear of the truck and jumped.

The substance of the testimony of the witnesses offered by defendants is that when the truck was stopped at plaintiff's store for the purpose of permitting the

driver to ascertain the location of the Caldwell house, the boys gave him the necessary information and volunteered to accompany the truck. In order to render this unrequested service, the boys climbed onto the machine. They were compelled to get down. About this time the Caldwell woman approached the truck and directed the driver to her home, saying, "The second house around the corner." On the arrival of the delivery conveyance at its destination, and while the furniture was being unloaded by the two men, numerous children climbed on and about the truck. They were compelled to descend therefrom on three or four occasions. After completing the delivery, and believing that no children were on the truck, the backing of the machine toward and into Third street was begun and effected. Thereafter, it was started in its forward movement. No knowledge was had of the child's presence on the truck until his screams were heard by the helper. On acquiring this knowledge, the driver attempted to and did stop the machine. The child, however, had previously jumped. Instructions had been given to the driver to carry no other persons on the truck except helpers employed by the company. He had obeyed those instructions. A "No Riders" sign was posted on the vehicle.

The learned trial judge, a former member of this court, has favored us with a written opinion in the case. His findings of fact support the version given by the witnesses for the defendants. In the opinion, he states:

"Ed Jones and Nelse Waddy both state positively that none of the boys were asked to help unload the furniture and that none of them did help. Some of the boys testified that they were asked to help and that they did help and carried some pieces into the house. It is not at all likely that any of them were asked to help, and that if any did so no doubt that it was of their own volition and that they were more of a hindrance to the two men than a help. Likewise, if any of the boys actually rode upon the truck around to the Caldwell house it was not because they were requested to do so, but, merely by sufferance. After the Caldwell woman had pointed out to the driver the location of her house, and it being so short distance away, there was no use or need for the boys to go show where it was. It is obvious that the boys were not needed to assist with the unloading.

"It is also obvious that the presence of the boys around and on the truck as it was being unloaded was a source of annoyance to Jones and his helper; and that the men did as a matter of fact make them get off from time to time as the men say they did. It can hardly be believed that the boys were telling the truth when they testify that at no time did Jones or his helper ever tell them to get off the truck, either as it left plaintiff's store on its way to the house, while there, or as it was leaving and backing out into Third street. Especially would this be true when the driver and his helper were ready to leave the house and in backing out to Third street. They had only a very short distance to back the truck into Third street and go on their way back to town, and there could have been no incentive to permit the boys to ride such a short distance then have to stop for them to get out of the truck. The boys could easily return from the Caldwell house only a short block back to plaintiff's store, over a street which no doubt they had been many times and were perfectly familiar. Jones and Waddy, we think, did just as they say they did, made the boys get off the truck when they got ready to back out, and after doing so they then backed out, feeling fully confident that, as it was but a short distance, the boys were left back behind them in a place of safety and not on the truck; the two men turned their attention to getting the truck backed into Third street safely by avoiding traffic on that street, feeling confident all the while that they had left the boys behind them to make their way to their respective homes."

As to his conclusions, we find in such opinion: "Under the circumstances certainly Jones and his helper, the court thinks, cannot be charged with negligence or the lack of exercise of proper care in dealing with the situation as they did. They did everything, it seems to the court, that could be reasonably expected of them to do to avoid injuring any of these children. Their demeanor upon the witness stand, and manner of testifying, impressed the court that they were telling the truth. Besides, it must be remembered that they had strict orders from their employers not to permit any one to ride upon the truck;

the truck had a sign posted on it that none should be allowed, and we think they did the best they could to carry out these instructions."

There is an obvious and apparent conflict between the version as given by the plaintiff's witnesses and that furnished by those of the defense. Furthermore, glaring discrepancies exist in the testimony on each respective side, and particularly in that of the persons who testified for plaintiff. Under circumstances of this nature, and as the record amply sustains the findings of fact of the trial court, we do not feel justified in disturbing his decision as to the manner of the occurrence of the accident.

Furthermore, the conclusions drawn by him from the found facts are in accord with ours. The driver and helper furnished all of the care and attention to the children which the law required of them. Under the circumstances, we think they were not negligent.

The judgment is affirmed.